UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| STEVEN BRADLEY BOWLING, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:20-cv-00254-JPH-MG |
| | ) |
| WEXFORD OF INDIANA, LLC, | ) |
| C. PEARISON, | ) |
| | ) |
| Defendants. | ) |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Steven Bowling, at all relevant times an inmate at Wabash Valley Correctional Facility, alleges that Defendants Chelsey Pearison and Wexford of Indiana, LLC were deliberately indifferent to the pain he suffered as a result of spinal stenosis. Defendants have filed a motion for summary judgment. Dkt. 37. Because the undisputed evidence shows that they were not deliberately indifferent to Mr. Bowling's serious medical needs, the motion is **GRANTED**.

## I.
## Facts and Background

Because the defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). Mr. Bowling has not responded to the summary judgment motion, so the Court treats the defendants' supported factual assertions as uncontested. *See*

1

*Hinterberger v. City of Indianapolis*, 966 F.3d 523, 527 (7th Cir. 2020); S.D. Ind. L.R. 56-1(b), (f).

### A. The Parties

Mr. Bowling was at all relevant times an inmate incarcerated at Wabash Valley.

Wexford was the private company that contracted with the Indiana Department of Correction to provide medical care to IDOC inmates.

Ms. Pearison is a medical assistant at Wabash Valley who was employed by Wexford. Dkt. 39–1 at 1 ¶ 1. She continues in that role but is now employed by Centurion Health, the current medical provider for IDOC inmates. *Id.* As a medical assistant, she identifies basic signs and symptoms of health concerns, collects basic health information from patients, conducts initial screenings of sick call patients, assists medical care providers with procedures and treatments, and relays information to those providers. *Id.* at ¶ 2. As a medical assistant, she cannot diagnose patients or order specific care; instead, she works under the supervision of the onsite nursing staff. *Id.*

### B. Mr. Bowling's Medical Care

Mr. Bowling was diagnosed with spinal stenosis in 2019 after being involved in a car accident. Dkt. 39-3 at 7 (Bowling Dep. at 24). Spinal stenosis is a narrowing of the spaces in the spine, which can compress the spinal cord and nerve roots exiting each vertebra. *See* Cleveland Clinic, "Spinal Stenosis," https://my.clevelandclinic.org/health/diseases/17499-spinal-stenosis (last

visited Dec. 6, 2022). Mr. Bowling experiences "sharp stabbing pains" in his lower back from the stenosis. Dkt. 39-3 at 9 (Bowling Dep. at 32).

Mr. Bowling arrived at Wabash Valley on November 13, 2019. Dkt. 39-2 at 14. Mr. Bowling was seen by a nurse on November 15 for his spinal stenosis. *Id.* at 11–13. The examining nurse noted that Mr. Bowling had pain in his "right lower back and down right leg" but could walk without difficulty and had a range of motion within normal limits. *Id.* The onsite physician prescribed Prednisone. *Id.* Mr. Bowling saw another nurse on November 23 and reported that the Prednisone helped at first, but the symptoms returned after he completed the prescribed supply of Prednisone. *Id.* at 8. The nurse referred him to the physician. *Id.* at 8–10.

On November 28, Mr. Bowling submitted a healthcare request about his back pain. *Id.* at 17. He explained that, since his November 23 appointment, his "pain & discomfort has progressed" and that he was experiencing nerve aggravation and having trouble walking. *Id.* Ms. Pearison responded on December 4, advising him that he had already been seen at sick call on November 15 and 23. *Id.*. Although Ms. Pearison does not recall meeting Mr. Bowling, dkt. 39-1 at 2 ¶ 4, Mr. Bowling's designated evidence—which the Court accepts as true for summary judgment—shows that during a visit around December 4, 2019, she took his vitals without taking notes, providing over-the-counter pain medication, or contacting the doctor to relay the seriousness of his symptoms. Dkt. 39-3 at 5–6 (Bowling Dep. at 17–18).

Mr. Bowling met with Dr. Samuel Byrd on December 6, 2019. Dkt. 39-2 at 5–7. Dr. Byrd prescribed Mobic, Prednisone, and Trileptal to manage his pain. *Id.* at 7. Mr. Bowling saw Dr. Byrd again on December 18 because his back "locked up" as he was doing push-ups, making him unable to walk with "severe sciatica and back pain/tightness." *Id.* at 2–4. He was admitted to the infirmary and, in addition to the medications he was already receiving, received a Toradol injection and a 7-day prescription for Flexeril. *Id.*

Mr. Bowling was released from the infirmary the next day, but he did not receive his medication for at least six days. Dkt. 39-3 at 7 (Bowling Dep. at 23). He then received "maybe three days" of his 7-day Flexeril prescription, then was then told his prescription had expired. *Id.*

On December 30, Ms. Pearison updated Mr. Bowling's medical chart to show that "a medical record review had been completed." Dkt. 39-1 at 3 ¶ 11; dkt. 39-2 at 1. She did not meet or communicate with Mr. Bowling as this was an administrative update only." Dkt. 39-1 at ¶ 11.

Mr. Bowling is suing Ms. Pearison for not doing anything to address his pain on December 4. Dkt. 1 at 2–3; dkt. 39-3 at 9–10 (Bowling Dep. at 33–34). He is suing Wexford for failing to adequately supervise and train staff, resulting in poor care for his back, including the missed medication after he left the infirmary. Dkt. 1 at 2–3; dkt. 39-3 at 10 (Bowling Dep. at 34). Defendants have moved for summary judgment.  Dkt. 37.

## II.
## Applicable Law

### A. Summary Judgment Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must inform the court "of the basis for its motion" and specify evidence demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must "go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324.

In ruling on a motion for summary judgment, the Court views the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted).

In this case, Mr. Bowling failed to respond to the summary judgment motion. Accordingly, facts alleged in the motion are "admitted without controversy" so long as support for them exists in the record. S.D. Ind. L.R. 56-1(f); *see* S.D. Ind. L.R. 56-1(b) (party opposing judgment must file response brief and identify disputed facts). "Even where a non-movant fails to respond to a motion for summary judgment, the movant 'still ha[s] to show that summary judgment [i]s proper given the undisputed facts.'" *Robinson v. Waterman*, 1

F.4th 480, 483 (7th Cir. 2021) (quoting *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 543 (7th Cir. 2011)).

### B. Deliberate Indifference

The Eighth Amendment's prohibition against cruel and unusual punishment imposes a duty on the states, through the Fourteenth Amendment, "to provide adequate medical care to incarcerated individuals." *Boyce v. Moore*, 314 F.3d 884, 889 (7th Cir. 2002) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). "Prison officials can be liable for violating the Eighth Amendment when they display deliberate indifference towards an objectively serious medical need." *Thomas v. Blackard*, 2 F.4th 716, 721–22 (7th Cir. 2021). "Thus, to prevail on a deliberate indifference claim, a plaintiff must show '(1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent.'" *Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021) (quoting *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016)).

For the purposes of this motion, the defendants concede that spinal stenosis is a serious medical need. Dkt. 38 at 11. So, to survive summary judgment, the designated evidence must allow a reasonable jury to find that the defendants acted with deliberate indifference—that is, that they consciously disregarded a serious risk to his health. *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016).

Deliberate indifference requires more than negligence or even objective recklessness. *Id.* Plaintiff "must provide evidence that an official actually knew

of and disregarded a substantial risk of harm." *Id.* "Of course, medical professionals rarely admit that they deliberately opted against the best course of treatment. So in many cases, deliberate indifference must be inferred from the propriety of their actions." *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 241 (7th Cir. 2021) (internal citations omitted). The Seventh Circuit has "held that a jury can infer deliberate indifference when a treatment decision is 'so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment.'" *Id.* (quoting *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006)). But where the evidence shows that a decision was based on medical judgment, a jury may not find deliberate indifference, even if other professionals would have handled the situation differently. *Id.* at 241–42.

### C. Municipal Liability

Private corporations acting under color of state law—including those that contract with the state to provide essential services to prisoners—are treated as municipalities for purposes of Section 1983. *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021). To prevail on a claim against Wexford, Mr. Bowling must first show that he was deprived of a federal right, and then he must show that the deprivation was caused by a Wexford custom or policy or failure to implement a needed policy. *Id.* Wexford cannot be held liable under the common-law theory of respondeat superior for its employees' actions. *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 653 (7th Cir. 2021).

Further, a "pivotal requirement" for most practice or custom claims is a showing of widespread constitutional violations. *See Hildreth v. Butler*, 960

F.3d 420, 426 (7th Cir. 2020). While it is not "impossible" for a plaintiff to demonstrate a widespread practice or custom with evidence limited to personal experience, "it is necessarily more difficult . . . because 'what is needed is evidence that there is a true municipal policy at issue, not a random event.'" *Id.* at 426–27 (quoting *Calhoun v. Ramsey*, 408 F.3d 375, 380 (7th Cir. 2005)).

## III.
## Analysis

Mr. Bowling's claims fail as a matter of law because the undisputed evidence shows that Ms. Pearison did not provide constitutionally inadequate medical care and any delay in his treatment was not caused by a Wexford practice or policy.

### A. Ms. Pearison

Mr. Bowling alleges that Ms. Pearison was deliberately indifferent during their December 4 encounter because she took his vitals but did nothing more.[1] Dkt. 1 at 2–3; dkt. 39-3 at 9–10 (Bowling Dep. at 33–34). By this time, Mr. Bowling had been seen by nurses on November 15 and November 23. Dkt. 39-2 at 8–14. At the first visit, he was prescribed Prednisone. *Id.* at 11–13. At the second visit, the nurse referred him to the medical provider and no additional medication was prescribed. *Id.* at 8–10. When Mr. Bowling submitted his subsequent healthcare request form, Ms. Pearison reviewed Mr. Bowling's records noted his recent visits. Dkt. 39-1 at ¶ 9. At that time, he had been

---

[1] Ms. Pearison swore in her affidavit that she had not met Mr. Bowling, dkt. 39-1 at 2 ¶ 4, but for purposes of the motion for summary judgment, the Court accepts Mr. Bowling's deposition testimony about this encounter.

referred to see the physician and remained on the waiting list. *Id.*; dkt. 39-2 at 10 (medical record noting that Mr. Bowling was "[r]eferred to MD").

"Under some circumstances when a nurse is aware of an inmate's pain . . . a delay in advising the attending physician or in initiating treatment may support a claim of deliberate indifference." *Reck v. Wexford*, 27 F.4th 473, 485–86 (7th Cir. 2022). Here, however, when Ms. Pearison saw Mr. Bowling on December 4, 2019, he was already on the referral list to be seen by the doctor. Dkt. 39-2 at 10. In fact, he met with Dr. Samuel Byrd two days later, on December 6. *Id.* at 5–7. Ms. Pearison therefore followed the "particular treatment plan" that had been "set in place for [Mr. Bowling's] future care." *Reck*, 27 F.4th at 486 (affirming summary judgment for the nurse defendant). Thus, no reasonable jury could find that Ms. Pearison "knowingly disregard[ed] a risk to his health." *Id.*

Further, as a medical assistant, Ms. Pearison had no authority to prescribe medication or order specific care for Mr. Bowling. Dkt. 39-1 at 1–2 ¶ 2–3. She worked under the supervision of the onsite nurses. *Id.* Within that role, the most Ms. Pearison could have been expected to do would be to inform a supervising nurse or pursue a physician referral. *See id.*; *Reck*, 27 F.4th at 485 ("We have noted . . . that it is important to take into account the role that the nurse plays in the care of the patient."). But here, the nurse who saw Mr. Bowling on November 23 had already referred him to the doctor. Mr. Bowling's November 28 healthcare request explained that his symptoms had worsened since his November 23 appointment, dkt. 39-2 at 17, but no jury could conclude that a

9

medical assistant was deliberately indifferent for failing to act with more urgency when Mr. Bowling had recently been seen and his treatment plan was being followed. *Reck*, 27 F.4th at 486 ("[O]ur task here is not to determine whether [the nurse defendant] acted consistently with the highest standards of the nursing profession or even whether her conduct might be deemed negligent. Our sole task is to determine whether a reasonable finder of fact could determine that she was deliberately indifferent.").

Because the undisputed evidence does not allow a reasonable jury to find that Ms. Pearison was deliberately indifferent to Mr. Bowling's medical needs, summary judgment must be granted in her favor.

### B. Wexford

Mr. Bowling has not designated evidence supporting the inference that a Wexford policy or custom caused a constitutional injury. He alleges that the December 4 meeting with Ms. Pearison and the delay in receiving his medication after he was discharged from the infirmary show that Wexford did not properly train or supervise its staff. Dkt. 1 at 4; *see* dkt. 39-3 at 10 (Bowling Dep. at 34). As explained above, Ms. Pearison's actions during their December 4 encounter did not violate the Constitution. Thus, only the missed medication is at issue.

*Hildreth v. Butler*, 960 F.3d 420 (7th Cir. 2020), is instructive. There, the plaintiff alleged that Wexford had a custom of delaying prescriptions. But his evidence consisted of three instances over 19 months where he personally experienced a delay. *Id.* at 426–27. The Seventh Circuit affirmed the grant of

summary judgment for Wexford finding that (1) in most cases challenging a municipal policy, the plaintiff must provide examples of experiences besides his own to show "there is a true municipal policy at issue, not a random event[,]" and (2) three instances of prescription delays over 19 months failed to show a widespread practice. *Id.* (citations omitted). Mr. Bowling's claim is even weaker than the claim in *Hildreth* as he has pointed to only one occasion where he experienced a delay in receiving his medication.

Because there is no evidence that a Wexford policy or custom caused a constitutional deprivation, Wexford is entitled to summary judgment.

## IV.
## Conclusion

For the foregoing reasons, the defendants' motion for summary judgment is **GRANTED**. Dkt. [37].

Final judgment consistent with this Order and the Court's September 14, 2020, Screening Order will issue in a separate entry.

**SO ORDERED.**

Date: 12/8/2022

                                                    James Patrick Hanlon
                                                    United States District Judge
                                                    Southern District of Indiana

Distribution:

STEVEN BRADLEY BOWLING
908 1/2 Central Ave.
Anderson, IN 46016

Douglass R. Bitner
Stoll Keenon Ogden PLLC
doug.bitner@skofirm.com

Rachel D. Johnson
Stoll Keenon Ogden PLLC
rachel.johnson@skofirm.com